910 P.2d 147

**UNITED PUBLIC WORKERS, LOCAL 646, AFSCME, AFL–CIO, Appellant–Appellant,**

v.

**Bernadine L. BROWN; Alfred Lardizabal, Director, Department of Personnel Services, State of Hawai'i; and Hawai'i Labor Relations Board, Appellees–Appellees.**

**No. 16792.**

Intermediate Court of Appeals of Hawai'i.

Jan. 30, 1996.

---

**12.** We do not necessarily concur with this characterization.

James A. King (King, Nakamura & Chun-Hoon, of counsel), on the briefs, Honolulu, for appellant-appellant.

Valri Lei Kunimoto, on the brief, Honolulu, for appellee-appellee, Hawai'i Labor Relations Board.

Before BURNS, C.J., and KIRIMITSU, J., and McKENNA, Circuit Judge in Place of ACOBA, J., recused.

KIRIMITSU, Judge.

The present appeal arose out of a Hawai'i Labor Relations Board (the HLRB) Order No. 875 (HLRB Order No. 875) issued on May 14, 1992 clarifying the HLRB's Decision No. 315 (HLRB Decision No. 315). Appellant–Appellant United Public Worker's Local 646 (UPW) appeals from the circuit court's January 5, 1993 Decision and Order denying UPW's appeal and affirming HLRB Order No. 875. We dismiss the appeal for the reasons set forth below.

## I. BACKGROUND

Bernadine L. Brown (Brown) worked as a corrections officer at O'ahu Community Correctional Center (OCCC) and was a member of "bargaining unit 10" which was exclusively represented by UPW. On August 24, 1984, Bruce Bikle (Bikle), Brown's Unit Team Manager at OCCC, posted a memo alleging that certain correction officers were derelict in their duties. The memo identified Brown as one of the officers and ordered that reports be submitted to address the allegations. On August 27, 1984, Union Steward Robert Rivera (Rivera) submitted a "Step 1 grievance" (August 27, 1984 grievance) with UPW on behalf of Brown "seeking to have the allegedly derogatory statements stricken from [Brown's] record and the matter investigated." According to Brown, two days after her grievance was filed, a UPW union representative spoke with her about the grievance. Then, a month after the grievance was filed, Brown asked Rivera about the grievance and she was told that it was submitted to her employer. Brown met "continuously" with OCCC Administrator Edwin Shimoda (Shimoda) who she acknowledged received a copy of her grievance. Then, "months later," Brown asked Shimoda about the status of the August 27, 1984 grievance and Shimoda stated that "he didn't even know [Brown] had a grievance." From that point, Brown did not know what happened with her grievance.

## II. PROCEDURAL HISTORY

On August 13, 1987, Brown filed with the HLRB a Prohibited Practice Complaint against UPW raising a number of allegations. Among them is Brown's charge that UPW violated the collective bargaining agreement by not processing her August 27, 1984 grievance thereby violating the provisions of Hawai'i Revised Statutes (HRS) § 89–13 (1993).[1] On April 17, 1991, HLRB Decision No. 315 was filed wherein the HLRB found that UPW breached its duty to fairly represent Brown. However, because the collective

---

1. Hawai'i Revised Statutes (HRS) § 89–13(a)(8) (1993) provides in relevant part that "[i]t shall be a prohibited practice for a public employer or its designated representative wilfully to: ... [v]iolate the terms of a collective bargaining agreement[.]"

bargaining agreement was not in evidence, the HLRB held that Brown "failed to state a violation for which a [HLRB] remedy exists. . . . Thus, although a breach of duty of fair representation did occur, [Brown] suffered no detriment which can be remedied by the [HLRB]. . . ."

UPW appealed HLRB Decision No. 315 in the circuit court alleging that the HLRB lacked jurisdiction because Brown's complaint was not filed within ninety days of the occurrence of the unfair labor practice as required by HRS § 377-9(*l*) (1993). The HLRB filed an answering brief arguing that UPW did not have standing to appeal to the circuit court under HRS § 91-14(a) (1993) because it was not "aggrieved or affirmatively prejudiced" by HLRB Decision No. 315. UPW's reply brief asserted that it was aggrieved by the HLRB's finding that it breached its duty to fairly represent Brown. On January 30, 1992, the circuit court ordered the case remanded to the HLRB because it "failed to address the jurisdictional issue raised by Appellant and Appellee State" (January 30, 1992 Remand Order). The circuit court instructed that "[i]f the HLRB finds no jurisdiction, the order shall be vacated except for such finding." [2]

On May 14, 1992, pursuant to the circuit court's January 30, 1992 Remand Order, the HLRB issued HLRB Order No. 875 which concluded that it had jurisdiction over Brown's complaint. HLRB Order No. 875 did not address the issue whether UPW had standing to bring the appeal.

UPW again appealed to the circuit court disputing HLRB Order No. 875 while the HLRB maintained that UPW lacked standing to bring the appeal to the circuit court. On January 5, 1993, the circuit court filed a Decision and Order denying UPW's appeal and affirming HLRB Order No. 875. On January 26, 1993, UPW timely appealed the circuit court's decision and order.

## III. JURISDICTION

■ The HLRB challenged UPW's standing to appeal its decisions to the circuit court from the beginning. UPW maintains that the issue of its standing to appeal was resolved when the circuit court did not dismiss its appeal of HLRB Decision No. 315 on the basis of standing despite the HLRB's argument. Instead, UPW asserts that the circuit court's January 30, 1992 Remand Order remanding HLRB Decision No. 315 to the HLRB was an "implicit . . . recognition of the UPW as a proper appellant." We disagree.

■ The circuit court's January 30, 1992 Remand Order states that the HLRB "failed to address the jurisdictional issue raised by Appellant and Appellee State. If the HLRB finds no jurisdiction, the order shall be vacated except for such finding." The circuit court therefore directed the HLRB to determine the jurisdictional issues raised by both UPW and the HLRB. However, the HLRB's jurisdictional argument involves a challenge to UPW's ability to appeal its decision to the circuit court, an issue that can only be decided appropriately by the circuit court and not the HLRB. Therefore, we hold that the circuit court erred in remanding to the HLRB the issue of UPW's standing to appeal. Further, because standing is a jurisdictional issue that needs to be addressed " 'at any stage of the case, . . . we have jurisdiction here on appeal, not of the merits, but for the purpose of correcting an error in jurisdiction.' " *County of Hawai'i v. Civil Serv. Comm'n,* 77 Hawai'i 396, 398, 885 P.2d 1137, 1139 (App.1994) (quoting *Chun v. Employees' Retirement Sys.,* 73 Haw. 9, 14, 828 P.2d 260, 263, *reconsideration denied,* 73 Haw. 625, 829 P.2d 859 (1992)).

## IV. STANDING

■ "Standing is concerned with whether the parties have the right to bring suit." *Pele Defense Fund v. Puna Geothermal Ven-*

---

**2.** The circuit court's remand order states:

The Hawaii [Hawai'i] Labor Relations Board (the HLRB) failed to address the jurisdictional issue raised by Appellant and Appellee State. If the HLRB finds no jurisdiction, the order shall be vacated except for such finding.

If the [HLRB] finds that it had jurisdiction, it shall set forth the facts supporting its conclusion as well as facts and law which support a conclusion that the union violated its duty of fair representation in the handling of Brown's grievance.

*ture,* 77 Hawai'i 64, 67, 881 P.2d 1210, 1213 (1994) (internal quotation marks and citation omitted). "HRS § 91–14(a) provides the means by which judicial review of administrative contested cases can be obtained." *Id.* Under HRS § 91–14(a), "[a]ny person *aggrieved* by a final decision and order in a contested case ... is entitled to judicial review thereof under this chapter...." (Emphasis added.) Thus, for UPW to have standing to appeal the HLRB's decision to the circuit court, UPW must be aggrieved by the agency's decision and have been "'involved in the administrative proceeding that culminated in the unfavorable decision.'" *Pele Defense Fund,* 77 Hawai'i at 69, 881 P.2d at 1215 (quoting *Mahuiki v. Planning Comm'n,* 65 Haw. 506, 513, 654 P.2d 874, 879 (1982)) (emphasis in original omitted). Because UPW was clearly involved in the administrative proceeding, our inquiry focuses on whether UPW was aggrieved by the HLRB decision.

■ Traditionally, to be considered "aggrieved" under HRS § 91–14(a), one must have "been specially, personally and adversely affected by special injury or damage to his [or her] personal or property rights." *Jordan v. Hamada,* 64 Haw. 451, 455, 643 P.2d 73, 76 (1982). The advent of the policy favoring review of administrative provisions led to the extension of standing to review administrative decisions to "those who have suffered 'injury in fact'" from the agency decision.[3] *Ariyoshi v. HPERB,* 5 Haw.App. 533, 540, 704 P.2d 917, 924, *reconsideration denied,* 5 Haw.App. 682, 753 P.2d 253 (1985). *See Akau v. Olohana Corp.,* 65 Haw. 383, 388–89, 652 P.2d 1130, 1134 (1982). However, "broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself [or herself] have suffered an injury." *Sierra Club v. Morton,* 405 U.S. 727, 738, 92 S.Ct. 1361, 1367–68, 31 L.Ed.2d 636 (1972). Thus, when the alleged injury only serves to vindicate the party's own "value preferences through the judicial process"

and does not show any concrete injury, then the party does not have standing to appeal the administrative decision to the circuit court. *Id.* at 740. *Accord Public Access Shoreline Hawaii v. Hawai'i County Planning Comm'n,* 79 Hawai'i 425, 434 n. 15, 903 P.2d 1246, 1255 n. 15 (1995); *Pele Defense Fund v. Paty,* 73 Haw. 578, 614 n. 27, 837 P.2d 1247, 1269 n. 27 (1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993); *Hawaii's Thousand Friends v. Anderson,* 70 Haw. 276, 283, 768 P.2d 1293, 1299 (1989).

■ UPW asserts that it has standing to appeal the agency decision to the circuit court because it was "clearly aggrieved and adversely affected" by the HLRB's determination that UPW breached its duty to fairly represent Brown. UPW alleges that this conclusion "was at least an 'injury in fact'" because as a result of the HLRB's decision UPW "will be obliged to treat grossly unmeritorious grievances in the same manner as ones of colorable merit, in order to *avoid future accusations* that it has breached its duty to its members." (Emphasis added.) UPW continues that "an error in the processing of an unmeritorious grievance *may* result in future charges brought before the [HLRB] for breach of the duty of fair representation and *may* perhaps also result in civil suits against the Union." (Emphases added.) Finally, UPW states that "[t]he limited resources of the Union will be further taxed by having to respond to such charges."

UPW's assertions are couched in terms of the effect the HLRB's conclusion will have on the way they handle grievances filed by employees they represent to avoid "future charges" before the HLRB or the possibility of civil suits. UPW also bemoans the effect of the possible action on their resources. UPW, therefore, does not allege any concrete injury but only the possibility of injury. Thus, the question of standing to appeal turns on whether such a possibility of injury is sufficient to constitute concrete injury.

---

**3.** "The necessary elements of an 'injury in fact' include: 1) an actual or threatened injury, which 2) is traceable to the challenged action, and 3) is likely to be remedied by favorable judicial action." *Public Access Shoreline Hawaii v. Hawai'i County Planning Comm'n,* 79 Hawai'i 425, 434, n. 15, 903 P.2d 1246, 1255 n. 15 (1995) (emphasis omitted) (interpreting HRS § 91–14).

The burden of establishing that the standing requirements have been satisfied rests upon UPW, and because the present case involves an appeal of an agency decision to the circuit court, our review of whether UPW has satisfied its burden is confined to the record on appeal. *Pele Defense Fund,* 77 Hawai'i at 70, 881 P.2d at 1216; HRS § 91–14(f). UPW's assertions are only of possible injury. The record is devoid of any documents, exhibits or testimony to substantiate that UPW suffered any concrete injury. *See Pele Defense Fund,* 77 Hawai'i at 70 n. 14, 881 P.2d at 1216 n. 14 (finding that appellees demonstrated an injury in fact through sworn statements attached as exhibits and through testimony at a public hearing held by the agency). Therefore, we hold that UPW did not demonstrate that it suffered a concrete injury. Because UPW is not a person aggrieved by the HLRB decision, it has no standing to appeal to the circuit court under HRS § 91–14(a). *See id.* at 69 n. 10, 881 P.2d at 1215 n. 10.

## V.   CONCLUSION

We therefore dismiss UPW's appeal to this court for lack of appellate jurisdiction.